## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

WEST VIRGINIA PIPE TRADES HEALTH & WELFARE FUND, EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF HAWAII, and UNION ASSET MANAGEMENT HOLDING AG,

Plaintiffs,

v.

MEDTRONIC, INC., WILLIAM A. HAWKINS, GARY L. ELLIS, RICHARD E. KUNTZ, JULIE BEARCROFT, RICHARD W. TREHARNE, and MARTIN YAHIRO,

Defendants.

Civil No. 13-1686 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON OBJECTIONS TO ORDER OF THE MAGISTRATE JUDGE**

---

Arthur C. Leahy, Jonah H. Goldstein, Robert R. Henssler, Jr., Danielle S. Myers, Susannah R. Conn, and Hillary B. Stakem, **ROBBINS GELLER RUDMAN & DOWD LLP**, 655 West Broadway, Suite 1900, San Diego, CA 92101; Shawn A. Williams, **ROBBINS GELLER RUDMAN & DOWD LLP**, 1 Montgomery Street, Suite 1800, San Francisco, CA 94104; Christopher M. Wood, **ROBBINS GELLER RUDMAN & DOWD LLP**, 414 Union Street, Suite 900, Nashville, TN 37219; James M. Hughes and Christopher F. Moriarty, **MOTLEY RICE LLC**, 28 Bridgeside Boulevard, Mt. Pleasant, SC 29464; Carolyn G. Anderson and Brian C. Gudmundson, **ZIMMERMAN REED, PLLP**, 1100 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402; Warren Price, III, **PRICE OKAMOTO HIMENO LUM**, 728 Ocean View Center, 707 Richards Street, Honolulu, HI 96813, for plaintiffs.

Joseph G. Petrosinelli, Steven M. Farina, and Amanda M. MacDonald, **WILLIAMS & CONNOLLY LLP**, 725 Twelfth Street Northwest, Washington, DC 20005; James K. Langdon and Theresa M. Bevilacqua, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for defendants.

Plaintiffs West Virginia Pipe Trades Health & Welfare Fund ("the Fund"), Employees' Retirement System of the State of Hawaii ("ERS"), and Union Asset

Management Holding AG ("Union") (collectively, "Plaintiffs") bring this consolidated class action against Medtronic and several of its officers and employees (collectively, "Medtronic"), alleging that Medtronic engaged in a scheme to defraud investors in violation of federal securities laws.

Plaintiffs moved to compel Medtronic to produce documents dating from January 1, 2000, to December 13, 2013. On June 12, 2015, Magistrate Judge Franklin L. Noel issued a discovery order ("the June 2015 order") granting in part and denying in part Plaintiffs' motion. Specifically, the Magistrate Judge narrowed the discovery period to documents from January 1, 2004, to December 31, 2013. Medtronic objects to the June 2015 order. Separately, Medtronic moved to compel Plaintiffs to re-produce two Rule 30(b)(6) designees and to produce responsive documents with respect to document request number 1. On July 14, 2017, the Magistrate Judge issued a discovery order ("the July 2017 order") granting Medtronic's motion. Plaintiffs object to the July 2017 order.

Because the Court will find that the Magistrate Judge's orders were not clearly erroneous, the Court will overrule the parties' objections, but will modify the Magistrate Judge's July 2017 order to clarify the scope of the re-production of Plaintiffs' Rule 30(b)(6) designees.

## BACKGROUND

Medtronic is the producer of the INFUSE bone graft, a bone morphogenetic protein ("BMP") that induces the body to form bone tissues. (Am. Consolidated Class Action Compl. ¶ 7, Nov. 4, 2013, Docket No. 28.) Plaintiffs allege that Medtronic

intentionally concealed significant safety risks of INFUSE from the public and, as a result, Medtronic's stock traded at artificially inflated prices from September 28, 2010 to August 3, 2011. (*Id.* ¶ 15, 25.) Plaintiffs claim that Medtronic's scheme and misrepresentations caused investors to lose hundreds of millions of dollars following the disclosure of the safety risks of INFUSE. (*Id.* at ¶ 38.)

## I.   BACKUP TAPES

Plaintiffs served Medtronic with 29 discovery requests for responsive documents dating from January 1, 2000, to December 31, 2013. (Decl. of Christopher M. Wood ¶ 2, Ex. 1 at 11-17, Apr. 27, 2015, Docket No. 120.) Plaintiffs subsequently moved to compel the production of these documents. (Mem. Supp. Pls.' Mot. to Compel at 1-2, Apr. 27, 2017, Docket No. 119.)

In response, Medtronic submitted an affidavit from Cynthia Rowe, an eDiscovery specialist, explaining that Plaintiffs' requests would require Medtronic to restore backup tapes from January 1, 2000, to August 22, 2007. (Decl. of Cynthia Rowe ¶¶ 14-17 ("Rowe Decl."), May 4, 2015, Docket No. 134.) Rowe alleged that, in the best case scenario, Medtronic would need to restore five to six backup tapes per custodian for each 180-day period. (*Id.* ¶ 17.) Medtronic requested that the Magistrate Judge narrow Plaintiffs' discovery period to January 1, 2009, to December 31, 2011. (Defs.' Opp'n to Pls.' Mot. to Compel at 15 May 4, 2015, Docket No. 133.)

In its June 2015 order, the Magistrate Judge granted Plaintiffs' motion but narrowed the discovery period to January 1, 2004, to December 31, 2011. (Order ("June 2015 Order") at 11-12, June 12, 2015, Docket No. 144.) Citing Medtronic's concerns

about restoring its backup tapes, the Magistrate Judge explained, "Plaintiffs' proposed fourteen-year time period for the production of documents is too broad and would impose an undue burden upon Medtronic." (*Id.* at 5.) The Magistrate Judge, however, disagreed with the much narrower discovery period requested by Medtronic. (*Id.*)

Medtronic objected to the Magistrate Judge's June 2015 order. (Obj. to Magistrate Judge's Order, June 29, 2015, Docket No. 148; Defs.' Suppl. Aff. Supp. Obj. to Magistrate Judge's Order at 2, May 5, 2017, Docket No. 268.) In support of its objection, Medtronic submitted an affidavit from Jason Bergerson, an eDiscovery specialist, alleging that it would take between 245 and 255 days and approximately $3,500,000 to restore the 5,393 backup tapes. (Aff. of Jason Bergerson ¶¶ 4-5, May 5, 2017, Docket No. 269.)

## II.  DEPOSITIONS OF CORPORATE DESIGNEES

In May and June 2015, Medtronic noticed Plaintiffs of its intent to take Rule 30(b)(6) depositions about fourteen topics:

1. The factual basis for Plaintiffs' allegations in the Complaint, including (but not limited to) the factual basis for this matter proceeding as a class action.

2. Plaintiffs' claimed amount of damages, including the amount of damages and the method used to arrive at that amount.

3. The organizational and reporting structuring of any division or other business unit of [the organization] that analyzes, purchases, sells, or otherwise has involvement with Medtronic Securities.

4. [The organization's] policies and procedures for engaging in the purchase or sale of securities which governed the

purchase or sale of Medtronic Securities during the Class Period.

5. The reason(s) [the organization] decided to purchase and/or sell Medtronic Securities during the Class Period.

6. The information relied upon by [the organization] in making any decision to purchase or sell . . . Medtronic Securities during the Class Period, including (but not limited to) the decision to purchase or sell . . . following (a) the publication of The Spine Journal on or about May 25, 2011; and (b) the publication of The Spine Journal on or about June 28, 2011.

7. The trading activity of [the organization] in Medtronic Securities from January 1, 2009 until December 31, 2011.

8. All communications concerning [the organization's] efforts to monitor the performance of or value of Medtronic Securities, including communications with third-party investment professionals, rating agency professionals, analysts, and members of the media.

9. [The organization's] use of outside investment managers and hedge funds to hold Medtronic Securities from January 1, 2009 until December 31, 2011.

10. The method used by [the organization] to calculate gains and losses in Medtronic Securities . . . from January 1, 2009 until December 31, 2011.

11. [The organization's] analysis of [The Spinal Journal articles and other medical journal articles].

12. Records, if any, that allow [the organization] to trace shares of Medtronic Securities to those acquired or sold in connection with [The Spine Journal articles].

13. [The organization]'s accounting and tax treatment of any investment, purchase, sale or trade of any Medtronic Security from 2009 through 2011.

14. The fee arrangement(s) between [the organization] and the other named Plaintiffs, including any financial arrangements between Robbins Geller Rudman & Dowd LLP and Price Okamoto Himeno & Lum.

(Decl. of Danielle S. Myers ¶¶ 1-3, Exs. 1-3, Aug. 11, 2017, Docket No. 350.)

## A. Deposition of Brian Aburano

ERS designated Brian Aburano as its Rule 30(b)(6) designee.  (Sealed Ex. 9 (Dep. of Brian Aburano ("Aburano Dep.") at 10:8-11, Apr. 12, 2017, Docket No. 239.)

Aburano testified generally about the nature of the claims brought by ERS.  (*Id.* at 27:13-29:5.)  Aburano testified that ERS did not provide "facts or information about the individual defendants [or] the basic facts that pertain to the allegations of fraudulent misrepresentations or scheme."  (*Id.* at 32:20-33:1-9.)  When asked if the Robbins Geller law firm drafted the theory of the fraudulent scheme, Aburano responded, "[t]he Robbins Geller firm, I guess together with the other law firms that are involved, did draft the vast majority of the complaint."  (*Id.* at 33:11-18.)  Aburano did not know why September 8, 2010, to August 3, 2011 was chosen as the class period.  (*Id.* at 35:2-8.)

Aburano did not know whether ERS continued to hold Medtronic securities at the time of the deposition or when ERS last had a position in Medtronic securities.  (*Id.* at 35:9-17.)  Aburano testified that ERS's investment manager, Barrow Hanley, had full discretion with respect to ERS's investments in Medtronic securities, but did not know who at Barrow Hanley was responsible for making the ERS's investment decisions.  (*Id.* at 52:10-17, 67:16-21.)  Aburano testified that he was unprepared to testify to the trading activities of ERS in Medtronic securities from January 1, 2009, to December 31, 2011,

except to the extent that Plaintiffs' attorneys had provided Medtronic with this information.  (*Id.* at 132:14-133:4.)  Aburano testified that he did not educate himself about, and could not recall, whether ERS sold any Medtronic securities during the class period.  (*Id.* at 40:23-41:1, 143:13-16.)  When asked the reasons that ERS invested in Medtronic securities during the class period, Aburano responded, "[ERS] itself did not decide to purchase or sell Medtronic stock during the class period . . . .  [I]t was Barrow Hanley."  (*Id.* at 68:3-9.)  Aburano did not know what information Barrow Hanley relied on or had access to before deciding to purchase or sell Medtronic securities.  (*Id.* at 50:3-9, 52:18-53:3.)

When asked if Aburano knew what ERS's claimed damages were, Aburano responded, "I know what their claim[ed] losses are."  (*Id.* at 43:2-6.)  Aburano testified that ERS's claimed losses were over either $1.9 million or $2 million depending on whether one calculated losses using the "last in, first out" ("LIFO") or "first in, first out" ("FIFO") methods.  (*Id.* at 43:7-18.)  Aburano could not describe how either method worked and, when presented with ERS's LIFO and FIFO analyses, could not explain who prepared the chart, whether the chart represented the number of Medtronic shares held by ERS post-class period, how the chart was used to calculate ERS's losses, or whether the numbers in the chart were accurate.  (*Id.* at 43:14-18, 95:22-103:1.)  Aburano did not know whether ERS received any gains from sales of Medtronic securities during the class period.  (*Id.* at 44:1-5.)  Aburano did not know whether ERS lent Medtronic securities as part of its security lending program, whether ERS's purported losses included any fees

received from lending its Medtronic securities, or whether ERS entered into hedge transactions involving Medtronic stock.  (*Id.* at 45:9-13, 46:19-23, 47:12-16.)

### B.  Deposition of Louie Romine

The Fund designated Louie Romine as its Rule 30(b)(6) designee.  (Sealed Ex. 8 (Dep. of Louie M. Romine ("Romine Dep.") at 13:11-14, Apr. 12, 2017, Docket No. 238.)  Romine testified that he was not at the Fund's meeting discussing this action and that he "drew the short straw to come to do this depo."  (*Id.* at 73:10-20.)

Romine testified generally about the nature of the claims brought by the Fund. (*Id.* at 33:4-34:5.)  Romine offered conflicting answers about whether the Fund provided any facts contained in the complaint but answered that he did not know whether the Fund provided any information with respect to Medtronic's scheme.  (*Id.* at 35:14-37:8.) Romine did not know why September 8, 2010, to August 3, 2011 was chosen as the class period.  (*Id.* at 43:17-24.)

Romine did not know whether the Fund continued to hold Medtronic securities at the time of the deposition or when the Fund last had a position in Medtronic securities. (*Id.* at 44:6-11.)  Romine testified that he did "really nothing" to prepare to discuss the trading activity of the Fund from January 1, 2009, to December 31, 2009, because the Fund's investment trading is controlled by the Fund's investment manager, Anchor Capital.  (*Id.* at 21:23-22:2-3.)  When asked, "Is it your testimony that you were not required to speak to Anchor Capital in preparation for your deposition today?," Romine responded, "People don't require me to do very much."  (*Id.* at 131:5-9.)  When asked what he did to prepare to discuss the information relied upon by the Fund in making

decisions to purchase or sell Medtronic securities, Romine testified, "Anchor Capital has the sole discretion to set inside our guidelines to buy and sell; so that's not the Fund's job." (*Id.* at 20:24-21:14.) Romine did not know what information Anchor Capital relied on or had access to before deciding to purchase or sell Medtronic securities. (*Id.* at 47:21-48:11, 67:6-13, 129:4-8.)

Romine testified that he did not know the Fund's claimed damages. (*Id.* at 51:12-13.) Romine testified that, according to a chart he had seen, the Fund lost $8,000 during the class period, but could not explain why the Fund's account statements said the Fund lost $5,000. (*Id.* at 94:1-5, 101:10-102:2.) Romine did not know whether the Fund received any gains as a result of sales of Medtronic securities during the class period but, based on an exhibit presented by the deposing attorney, thought it "probably" had received gains. (*Id.* at 51:12-52:7.) Romine testified that he could not describe the method used by the Fund to calculate its gains and losses. (*Id.* at 132:9-15.) Romine did not know what tax treatment was given to the Fund's gains. (*Id.* at 136:1-5.)

Medtronic moved to compel HERS and the Fund to re-produce its Rule 30(b)(6) designees because Aburano and Romine were inadequately prepared to give sworn, binding testimony. (Memo. Supp. Mot. to Compel ("Apr. 2017 Mot. to Compel") at 2-3, Apr. 5, 2017, Docket No. 206.) In the July 2017 order, the Magistrate Judge granted Medtronic's motion to compel after finding that Aburano and Romine were inadequately prepared. (Order ("July 2017 Order") at 5-6, July 14, 2017, Docket No. 333.) The Magistrate Judge ordered Plaintiffs to produce Rule 30(b)(6) designees "who can competently testify on matters related to Plaintiffs' investment decisions making

processes, protocols, and market assessments." (*Id.* at 6.)  Plaintiffs object to the July 2017 order and seek clarification about the scope of the order.

## III.  REQUEST 1

In Request 1 of its first set of document requests, Medtronic requested that Plaintiffs produce "[a]ll documents reflecting trading activity in any Medtronic Security from September 8, 2010, until August 3, 2011."  (Decl. of Theresa M. Bevilacqua ¶ 3, Ex. 1 at 5-6, Apr. 5, 2017, Docket No. 208.)  In the June 2015 order, the Magistrate Judge concluded that the discovery period for this case is January 1, 2004, to December 31, 2013.  (June 2015 Order at 4.)  Subsequently, Medtronic sent Plaintiffs a letter modifying Request 1 to "request that Plaintiffs produce all documents that reflect trading activity in any Medtronic Security during the Discovery Period," which the letter defined as January 1, 2004, and December 31, 2013.  (Decl. of Theresa M. Bevilacqua, ¶ 7, Ex. 5 at 2-3, Docket No. 208.)

Medtronic moved to compel Plaintiffs to produce documents responsive to Request 1 for the entire discovery period.  (Apr. 2017 Mot. to Compel at 3-5.)  In its July 2017 order, the Magistrate Judge granted Medtronic's motion.  (July 2017 Order at 15.) Plaintiffs object to the July 2017 order.

## ANALYSIS

### I.    STANDARD OF REVIEW

"The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential."  *Skukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013); *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008,

1014 (D. Minn. 2007). Reversal is only appropriate if the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). For an order to be clearly erroneous, the district court must be "left with the definite and firm conviction that a mistake has been committed." *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "[T]he district court has inherent power to review the final decision of its magistrates." *Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975).

## II.    BACKUP TAPES

Medtronic objects to the June 2015 order's requirement that Medtronic restore and search its backup tapes for emails. The Court must consider whether the Magistrate Judge clearly erred in ordering the production of Medtronic's backup tapes.

Rule 26(b)(1) provides that discovery must be both "relevant" and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs the likely benefit."[1] Fed. R. Civ. P. 26(b)(1). "[T]he presumption is that the responding party must bear the

---

[1] At the time of the Magistrate Judge's June 2015 order, Rule 26(b)(1) did not include the proportionality language. Fed. R. Civ. P. 26(b)(1) (2015). On December 1, 2015, amendments to the language of Rule 30(b)(6) went into effect. The Court applies amendments to the Federal Rules of Civil Procedure retroactively so long as it is "just and practicable" to do so. *Polaris Indus., Inc. v. Arctic Cat Inc.*, Civil No. 15-4129 (JRT/LIB), 2016 WL 3541541 at *1 (D. Minn. June 23, 2016). The 2015 amendment "restores the proportionality factors to their original place in defining the scope of discovery but does not change the existing responsibilities of the court and the parties to consider proportionality." *Hodges v. Pfizer, Inc.*, Civil No. 14-4855 (ADM/TNL), 2016 WL 1222229 (D. Minn Mar. 28, 2016) (quotation omitted). The Court thus applies the current Rule 26(b)(1) language in this case.

expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

Additional rules apply with respect to electronically stored information. Rule 26(b)(2)(B) provides that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." The party seeking the protective order has the burden to show that "the information is not reasonably accessible because of undue burden or cost." *Id.* The Court may nevertheless order discovery if the requesting party shows "good cause." *Id.* The Court must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Plaintiffs initially proposed a discovery period of 2000 to 2013, which Medtronic opposed as unduly burdensome. The Magistrate Judge concluded that "Plaintiffs' proposed fourteen-year time period for the production of documents is too broad and would impose an undue burden upon Medtronic." (June 2015 Order at 5.) Accordingly, the Magistrate Judge narrowed the relevant discovery period for the production of documents to January 1, 2004, to December 31, 2013.

Nevertheless, Medtronic asserts that proportionality requires an even further reduction in light of the expense of searching thousands of backup tapes. Medtronic estimates that it would cost $3,500,000 to comply with the Magistrate Judge's order and would require the production of 5,393 backup tapes. Medtronic's latest figures are significantly greater than those originally provided in the Rowe affidavit. Rowe

estimated that Medtronic would need to restore five to six backup tapes per custodian for every 180-day period, which equates to slightly over 4,000 backup tapes during the proposed 2000 to 2007 discovery period.[2]   Since the Magistrate Judge reduced the discovery period to 2004 to 2013, under the Rowe affidavit, Medtronic would only be expected to restore approximately 1,861 backup tapes.   The Court does not find that Medtronic's new calculations alter or make contrary to law the Magistrate Judge's conclusion that the burden and expense do not outweigh the likely benefit of producing the required documents.   "The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information."   *Webb v. Ethicon Endo-Surgery, Inc.*, Civil No. 13-1947 (JRT/JJK), 2015 WL 317215, at *7 (D. Minn. 2015) (quotation omitted.)

The Court concludes that the Magistrate Judge appropriately took expense, burden, and likely benefit into account when considering the scope of the July 15 order. Thus, the Court will overrule Medtronic's objection as to the scope of the documents request in this case.

---

[2] The period at issue is January 1, 2000, to August 22, 2007, which is a period of 2790 days or approximately 16 180-day periods.  (Rowe Decl. ¶ 14.)  16 180-day periods multiplied by 42 custodians multiplied by 6 tapes per period equals 4032 tapes.

## III.    RULE 30(B)(6) DEPOSITIONS

### A. Adequacy of Testimony

Plaintiffs argue that Aburano and Romine were adequately prepared to testify about the fourteen topics noticed by Medtronic.  The Court must consider whether the Magistrate Judge clearly erred in ordering ERS and the Fund to re-produce its Rule 30(b)(6) designees.

Federal Rule of Civil Procedure 30(b)(6) sets forth the procedure for deposing an organization.[3]  When a party names an organization as the deponent, the organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  Fed. R. Civ. P. 30(b)(6).  The designee "must testify about information known or reasonably available to the organization."  *Id.*  The organization "must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation."  *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) (quotation omitted).  The organization "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits" so that the designee may "fully and unevasively answer questions about the designated subject matter."  *Id.* at 638-39 (quotation omitted).

---

[3] Rule 30(b)(6) requires the deposing party to "describe with reasonably particularity the matters for examination."  Plaintiffs do not argue that they were not adequately noticed about the fourteen topics at issue in this dispute.

A Rule 30(b)(6) designee testifies to the position of the organization and not his or her personal opinion. *See id.* As such, Rule 30(b)(6) designees "have the effect of binding a corporation in a way that fact witnesses cannot." *Bertrang v. Wis Cent., Ltd.*, 301 F.R.D. 364, 368 (D. Minn. 2014.) Because a Rule 30(b)(6) deposition is binding on the organization, courts generally prohibit the organization from submitting contradictory or inconsistent evidence unless it is accompanied by a reasonable explanation.[4]

### 1. Topics (5), (6), (7), (8), (11), and (12)

Topics (5), (6), (7), (8), (11), and (12) seek testimony about Plaintiffs' purchases and sales of Medtronic securities. Both ERS and the Fund used third-party investment managers to manage their investments. Plaintiffs argue that they did not reasonably know why their third-party investment managers chose to purchase and sell Medtronic securities and, therefore, were not required to testify about it. The Court must consider to what extent an organization must prepare its Rule 30(b)(6) designee about the activities of third-party investment managers.

Rule 30(b)(6) requires the designee to testify about information "known or **reasonably available**" to the organization. Other district courts have held that organizations have a duty to reasonably prepare Rule 30(b)(6) designees to testify about

---

[4] For examples of such cases, see *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268-69 (2nd Cir. 1999); *Hyde v. Stanley Tools¸* 107 F. Supp. 2d 992, 993 (E.D. La. 2000) ("In situations where the non-movant in a motion for summary judgment submits an affidavit which directly contradicts an earlier [Rule 30(b)(6)] deposition and the movant has relied upon and based its motion on the prior deposition, courts may disregard the later affidavit.").

information held by third-party sources if that information is reasonably available.[5] Plaintiffs have not produced any evidence showing that they do not have access to investment information held by their third-party investment managers. There is no reason to expect that either ERS or the Fund would not have access to its own investment and trading information. The Magistrate Judge did not clearly err in implicitly concluding that the third-party investment information is reasonably available to Plaintiffs for purposes of Rule 30(b)(6).

Next, the Court must consider whether the Magistrate Judge clearly erred in finding that Plaintiffs' Rule 30(b)(6) designees were inadequately prepared to discuss Topics (5), (6), (7), (11), and (12). Substantial evidence in the record supports the Magistrate Judge's conclusion that neither Aburano nor Romine were prepared to discuss these topics. Both Aburano and Romine assumed that information held by the third-party investment managers was outside the scope of a Rule 30(b)(6) deposition. Aburano did not know whether ERS sold any Medtronic securities during the class period. Neither Aburano nor Romine knew why the third-party investors chose to invest in Medtronic securities. Neither Aburano nor Romine knew what information the third-party investment managers relied on in deciding to purchase or sell Medtronic securities, including whether the third-party investment managers relied on articles from The Spine

---

[5] *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 694-96 (S.D. Fla. 2012) (concluding that insurance company's Rule 30(b)(6) designee was required to seek out information from the insured); *Calzaturficio S.C.A.R.P.A. S.P.A. v. Faviano Shoe Co.*, 201 F.R.D. 33, 38-39 (D. Mass. 2001) (stating that a Rule 30(b)(6) designee must "review all documents that were in [the corporation's] control," including those held by a third-party accountant).

Journal.  The Court concludes that the Magistrate Judge did not clearly err in deciding that Aburano and Romine were inadequately prepared to discuss Topics (5), (6), (7), (11), and (12).  Accordingly, the Court will overrule Plaintiffs' objections with respect to Topics (5), (6), (7), (11), and (12).[6]

### 2. Topics (2) and (10)

Topics (2) and (10) seek testimony about Plaintiffs' claimed damages, the methods used by Plaintiffs to calculate these damages, and the methods used by Plaintiffs to calculate their gains and losses in Medtronic securities.  The Court must consider whether the Magistrate Judge clearly erred in finding that Plaintiffs' Rule 30(b)(6) designees were inadequately prepared to discuss Topics (2) and (10).

First, the Court must consider whether the Magistrate Judge clearly erred in finding that the Rule 30(b)(6) designees were inadequately prepared to discuss damages.  "The types, categories, and nature of the damages [the plaintiff] claims to have suffered" are proper topics for a Rule 30(b)(6) deposition.  *Allison v. CRC Ins. Servs. Inc.*, No. 10 CV 3313, 2011 U.S. Dist. LEXIS 131546, *6-9 (N.D. Ill. Nov. 15, 2011).  Testimony about damage calculations, however, is not properly the subject of a Rule 30(b)(6) deposition.  *Id.* at *8-9.  Neither Aburano nor Romine knew what Plaintiffs were

---

[6] Plaintiffs argue that they should not be required to re-produce their Rule 30(b)(6) designees because they have provided Medtronic with additional evidence that answers the questions Medtronic posed to the designees.  The deposing party may question a Rule 30(b)(6) designee about a particular topic even if the topic is duplicative of other evidence because Rule 30(b)(6) testimony is "binding" on the organization.  *See Bertrang v. Wis. Cent., Ltd.*, 301 F.R.D. 364, 368 (D. Minn. 2014).  The fact that other evidence answers Medtronic's questions does not dispose of Medtronic's objection because, unlike the testimony of a Rule 30(b)(6) designee, fact evidence is not binding on Plaintiffs.  *Id.*

claiming as damages.  The Court concludes that the Magistrate Judge did not clearly err in finding that Aburano and Romine were not adequately prepared to discuss Topic (2).

Second, the Court must consider whether the Magistrate Judge clearly erred in finding that the Rule 30(b)(6) designees were inadequately prepared to discuss their organizations' gains and losses resulting from trading Medtronic securities.  Neither Aburano nor Romine were able to testify competently about their organizations' gains and losses resulting from trading Medtronic securities.  Aburano was not able to explain the method used to calculate ERS's losses and, when presented with ERS's analyses, could not explain much of the information in the analyses.  Aburano did not know whether ERS realized any gains from the sale or lending of Medtronic securities.  Romine stated that he was not prepared to testify as to the method used to calculate the Fund's gains or losses.  The Court concludes that the Magistrate Judge did not clearly err in deciding that Aburano and Romine were inadequately prepared to discuss Topic (10).

Accordingly, the Court will overrule Plaintiffs' objections to the July 2017 order with respect to Topics (2) and (10).  To the extent the parties seek clarification, Plaintiffs' Rule 30(b)(6) designees do not have to be prepared to discuss the calculation of damages for purposes of Topic (2) but must be prepared to discuss the organizations' calculations of gains and losses for purposes of Topic (10).  *See Allison*, 2011 U.S. Dist. LEXIS 131546, *6-9.

### 3. Topic (1)

Topic (1) seeks testimony about the factual bases for Plaintiffs' allegations in the complaint. The Magistrate Judge's July 2017 order did not explicitly address whether either Aburano or Romine was inadequately prepared to discuss Topic (1).

Although Romine was able to describe the general bases for Plaintiffs' claims, Romine was inconsistent in answering whether the Fund provided any information about Medtronic's fraudulent scheme and misleading statements. Romine did not know when the alleged scheme began. Romine also did not know why September 8, 2010, to August 3, 2011 was chosen as the class period. On the whole, the record reflects that Romine was not adequately prepared to testify about Topic (1).

Aburano performed much better than Romine. Aburano was able to describe Plaintiffs' claims and explained that ERS provided only the information about its organization. Medtronic argues that Aburano could only "guess" that the law firms drafted the "vast majority" of the complaint. Medtronic's argument misconstrues Aburano's testimony. When asked if the Robbins Geller firm drafted the theory of the scheme, Aburano responded, "[T]he Robbins Geller firm, I guess together with the other law firms that are involved, did draft the vast majority of the complaint." Aburano did not "guess" that the law firms drafted the complaint; Aburano stated that Robbins Geller drafted the complaint and guessed that the other law firms were probably involved in the drafting process.

Medtronic also argues that, because Aburano did not know why the class period was chosen, he was inadequately prepared. But, generally, Aburano was adequately

prepared to discuss the factual bases for the allegations in the complaint, who drafted the complaint, and what information ERS provided for purposes of the complaint. In sum, while Aburano's testimony was perhaps not as specific as Medtronic would have liked, the Court concludes that Aburano was adequately prepared to discuss Topic (1).

Accordingly, the Court will overrule Plaintiffs' objection with respect to the Fund's Rule 30(b)(6) designee, but will conclude that ERS's Rule 30(b)(6) designee does not need to be prepared to discuss Topic (1).

### B. Limited Scope

The parties seek clarification on which topics Medtronic may re-depose Plaintiffs' Rule 30(b)(6) designees. The Court must decide whether the July 2017 order permits Medtronic to re-depose Plaintiffs' Rule 30(b)(6) designees on all fourteen topics.

The Magistrate Judge ordered Plaintiffs to produce corporate deponents "who can competently testify on matters related to Plaintiffs' investment decisions making processes, protocols, and market assessments." Topics (2)-(13) concern matters related to Plaintiffs' investment activities and, therefore, the Magistrate Judge's order encompasses all twelve of these topics. Plaintiffs note that Medtronic did not specifically cite any deficiencies with respect to the designees' answers to Topics (3) and (4). However, given that the designees were inadequately prepared for the majority of the investment-related topics, it was within the Magistrate Judge's broad discretion to include Topics (3) and (4) in its order. *See Skukh*, *LLC*, 295 F.R.D. at 235.

Plaintiffs do not argue that Aburano and Romine were adequately prepared to discuss Topic (14). The Magistrate Judge did not discuss Topic (14) in its July 2017

order.  Medtronic did not challenge Aburano's responses to questions concerning Topic (14), but challenged Romine's responses.  As such, the Court concludes that Medtronic may question the Fund's Rule 30(b)(6) designee about Topic (14), but may not question ERS's Rule 30(b)(6) designee about Topic (14).

Accordingly, the Court will restrict Medtronic's questioning of ERS's Rule 30(b)(6) designee to Topics (2)-(13).  The Court will permit Medtronic to question the Fund's Rule 30(b)(6) designee about all fourteen topics.

### C.  Union's Rule 30(b)(6) Designee

The Court must decide whether the July 2017 order entitles Medtronic to re-depose Union's Rule 30(b)(6) designee.  Medtronic did not move to compel Plaintiffs to re-produce Union's Rule 30(b)(6) designee.  The Magistrate Judge ordered ERS and the Fund to re-produce their designees, but did not order Union to re-produce its designee.  Medtronic argues that, because the Magistrate Judge granted Medtronic's request for discovery for the period of January 1, 2004 to December 31, 2013, it should be allowed to re-depose Union's Rule 30(b)(6) designee.  Union's Rule 30(b)(6) designee was not included in the July 2017 order's limited list of what discovery Medtronic could obtain from this expanded discovery period.  Accordingly, the Court will conclude that the July 2017 order does not permit Medtronic to re-depose Union's Rule 30(b)(6) designee.[7]

---

[7] Medtronic argues that consideration of this issue by the Court is not ripe because Plaintiffs have brought a motion for a protective order before the Magistrate Judge.  Plaintiffs' motion seeks to restrict questioning of ERS's Rule 30(b)(6) designee and the Fund's Rule 30(b)(6) designee to the class period, rather than the extended discovery period of January 1, 2004, through December 21, 2013.  (Memo. Supp. Pls.'s Mot. for Protective Order at 5-6, Aug.

(Footnote continued on next page.)

## IV.    DOCUMENT REQUEST 1

Plaintiffs argue that Request 1 only required Plaintiffs to produce documents from September 8, 2010, to August 3, 2011.  The Court must decide whether the Magistrate Judge clearly erred by requiring Plaintiffs to produce documents responsive to Request 1 for the extended discovery period of January 1, 2004, to December 31, 2013.  Following the June 2015 order's extension of the discovery period, Medtronic modified Request 1 and requested that Plaintiffs produce all related documents for the extended discovery period.  The Court concludes that the Magistrate Judge did not clearly err in granting Plaintiffs' motion to compel production of responsive documents for the extended discovery period.  Accordingly, the Court will overrule the Plaintiffs' objection with respect to Request 1.

### ORDER

Based on the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  The Court **OVERRULES** Defendants' objections [Docket Nos. 148, 268] to the Magistrate Judge's order dated June 12, 2015 [Docket No. 144].

2.  The Court **OVERRULES** Plaintiffs' objections [Docket No. 348] to the Magistrate Judge's order dated July 14, 2017 [Docket No. 333] as to Medtronic's motion to compel re-production of Employees' Retirement System of the State of

_____

(Footnote continued.)

23, 2017, Docket No. 365.)  Plaintiffs' motion does not address whether the July 2017 order permits Medtronic to re-depose Union's Rule 30(b)(6) designee.  The Court, therefore, rejects Medtronic's argument that this issue is not ripe.

Hawaii's Rule 30(b)(6) designee **with the modifications** that the Rule 30(b)(6) deposition is limited to Topics (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), and (13) and that the Rule 30(b)(6) designee is not required to discuss the calculation of damages for purposes of Topic (2).

3. The Court **OVERRULES** Plaintiffs' objections [Docket No. 348] to the Magistrate Judge's order dated July 14, 2017 [Docket No. 333] as to Medtronic's motion to compel re-production of West Virginia Pipe Trades Health & Welfare Fund's Rule 30(b)(6) designee **with the modification** that the Rule 30(b)(6) designee is not required to discuss the calculation of damages for purposes of Topic (2).

4. The Court concludes that the Magistrate Judge's order dated July 14, 2017 [Docket No. 144] does not permit Medtronic to re-depose Union Asset Management Holding AG's Rule 30(b)(6) designee.

5. The Court **OVERRULES** Plaintiffs' objections [Docket No. 348] to the Magistrate Judge's order dated July 14, 2017 [Docket No. 333] as to Medtronic's motion to compel production of responsive documents to Request 1.

6. The Court hereby **ORDERS** that the parties show cause on or before twenty (20) days from the date of this Order why the Court should not unseal the Order and specify any portion of the Order warranting redaction.

DATED:  October 12, 2017
at Minneapolis, Minnesota.

          _____ s/John R. Tunheim_____
             JOHN R. TUNHEIM
                 Chief Judge
          United States District Court