# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re MEDTRONIC, INC. SECURITIES LITIGATION | ) ) ) | Master File No. 0:13-cv-01686-MJD-KMM |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | STIPULATION OF SETTLEMENT |
| ALL ACTIONS. | ) ) ) | |

1441202_3

This Stipulation of Settlement, dated July 17, 2018 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiffs Employees' Retirement System of the State of Hawaii and Union Asset Management Holding AG and Named Plaintiff West Virginia Pipe Trades Health & Welfare Fund (together, "Plaintiffs") (on behalf of themselves and each of the Class Members), by and through their counsel of record in the Litigation; and (ii) Medtronic, Inc. ("Medtronic" or the "Company"), William A. Hawkins, Gary L. Ellis, Dr. Julie Bearcroft, and Dr. Martin Yahiro (together, "Defendants"), by and through their counsel of record in the Litigation.[1]  Plaintiffs and Defendants are referred to herein as the "Settling Parties."   The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.     THE LITIGATION

The Litigation is pending in the United States District Court for the District of Minnesota (the "Court").  The initial complaint in this action was filed on June 27, 2013. ECF No. 1.  On September 10, 2013, the Court appointed Lead Plaintiffs and Lead Counsel. ECF No. 16.

Plaintiffs allege that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by, *inter alia*, engaging in a scheme and course of conduct to defraud the investing public regarding the Company's clinical trial design and reporting of clinical data and the risks associated with the use of INFUSE® Bone Graft ("Infuse").  Plaintiffs

---

[1]     All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

further allege that as a result of Defendants' scheme, Medtronic stock traded at artificially inflated prices during the Class Period.

Plaintiffs filed their Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") on November 4, 2013. ECF No. 28. Defendants and the formerly-named defendants, Dr. Thomas A. Zdeblick, Dr. J. Kenneth Burkus, and Dr. Scott D. Boden, moved to dismiss the Complaint on January 15, 2014. ECF Nos. 40-51, 53-57. Plaintiffs opposed the motion (ECF No. 64) and Defendants and the formerly-named defendants filed their replies (ECF Nos. 65-70). On September 29, 2014, the Court issued an order granting in part and denying in part the motion to dismiss with respect to the Defendants, and granting it with respect to the formerly-named defendants. ECF No. 76.

On March 17, 2015, Defendants moved for summary judgment. ECF Nos. 88, 95-97. Plaintiffs opposed the motion (ECF Nos. 101-105). Defendants filed their reply (ECF No. 116), and on September 30, 2015, the Court granted Defendants' motion (ECF No. 163). Plaintiffs appealed the ruling, and on December 28, 2016, the Eighth Circuit vacated the ruling and remanded the case to the District Court for further proceedings.

On April 17, 2015, Plaintiffs moved for class certification. ECF Nos. 108-110. After conducting class certification discovery, Defendants filed their opposition on September 16, 2015. ECF Nos. 158-159. Plaintiffs renewed their class certification motion following the Eighth Circuit's ruling on Defendants' summary judgment motion. ECF Nos. 194-197. Defendants filed their opposition on May 8, 2017 (ECF Nos. 272-273), and Plaintiffs filed their reply on June 27, 2017. ECF Nos. 330-331. On January 30, 2018, the Court granted in part Plaintiffs' motion for class certification and defined the class as: "All persons or entities

- 2 -

who purchased or otherwise acquired the publicly traded common stock of Medtronic between September 8, 2010 and June 28, 2011 (the "Class Period"), and who were damaged by defendants' alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest." ECF No. 502.

On May 5, 2017, the Individual Defendants filed their renewed motion for summary judgment (ECF Nos. 259-267), which was opposed by Plaintiffs on May 19, 2017 (ECF Nos. 278-304). The Individual Defendants filed their reply on May 26, 2017 (ECF Nos. 309-315), Plaintiffs filed their renewed opposition to the motion on November 15, 2017 (ECF Nos. 433-473), and the Individual Defendants filed their supplemental reply on November 29, 2017 (ECF Nos. 474-494). Oral argument was held on December 8, 2017. On March 2, 2018, the Court granted in part and denied in part this motion for summary judgment. ECF No. 503. It granted summary judgment on all claims against Dr. Richard W. Treharne and Dr. Richard E. Kunz, control-person liability claims against Dr. Julie Bearcroft and Dr. Martin Yahiro, and scheme-liability claims against Mr. William Hawkins and Mr. Gary Ellis. ECF No. 503.

The parties engaged in extensive fact and expert discovery, with the negotiation for, production, review and analysis of over five million pages of documents produced by Defendants and third parties. The parties took approximately 35 depositions. The parties also exchanged reports on behalf of five expert witnesses.

- 3 -

The parties engaged the services of the Hon. Layn R. Phillips (Ret.), a nationally recognized mediator. The parties engaged in an in-person mediation session with Judge Phillips on December 21, 2017. Although the parties negotiated in good faith, no agreement was reached and litigation continued. The parties continued their discussion through Judge Phillips, and have accepted Judge Phillips' mediator's proposal to resolve the Litigation. The agreement included, among other things, the Settling Parties' agreement to settle and release all claims asserted in the Litigation in return for a cash payment of $43,000,000.00 to be paid by Medtronic, on behalf of Defendants, for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement between the Settling Parties.

## II.     DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants expressly have denied, and continue to deny, that they have committed any act or omission giving rise to any liability under §§10(b) or 20(a) of the Securities Exchange Act of 1934. Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Plaintiffs in the Litigation, including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied, and continue to deny, among other allegations, the allegations that Plaintiffs or the Class have suffered any damages, that the price of Medtronic common stock was artificially inflated by reasons of alleged misrepresentations, non-

- 4 -

disclosures or otherwise, or that Plaintiffs or the Class were harmed by the conduct alleged in the Litigation or that could have been alleged as part of the Litigation. Defendants believe that the evidence developed to date supports their position that they acted properly at all times and that the Litigation is without merit. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall in any event be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this Litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.   PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports their claims. However, Plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any

- 5 -

litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation.  Plaintiffs and their counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation.  Plaintiffs believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class.  Based on their evaluation, Plaintiffs and their counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Plaintiffs and the Class.

## IV.    TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and the Class Members) and Defendants, by and through their counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1.    Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2    "Claims Administrator" means the firm of Gilardi & Co. LLC.

- 6 -

1.3     "Class" means all Persons who purchased or otherwise acquired the publicly traded common stock of Medtronic between September 8, 2010 and June 28, 2011, and who were damaged by Defendants' alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934.  Excluded from the Class are:  Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

1.4     "Class Member" or "Member of the Class" mean a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5     "Class Period" means the period from September 8, 2010 through June 28, 2011, inclusive.

1.6     "Defendants" means Medtronic and the Individual Defendants.

1.7     "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred or have been waived.

1.8     "Escrow Agent" means the law firms of Robbins Geller Rudman & Dowd LLP and Motley Rice LLC or their respective successor(s).

1.9     "Final" means when the last of the following with respect to the Judgment approving this Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal

- 7 -

Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the final determination of that motion or appeal such that no further judicial review or appeal is permitted, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, or expenses, (ii) the Plan of Allocation (as submitted or subsequently modified), or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.10    "Immediate Family" with respect to the Individual Defendants means any spouse, parent, step-parent, grandparent, child, step-child, grandchild, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.11    "Individual Defendants" means William A. Hawkins, Gary L. Ellis, Dr. Julie Bearcroft, and Dr. Martin Yahiro.

- 8 -

1.12    "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.13    "Lead Counsel" means the law firms of Robbins Geller Rudman & Dowd LLP and Motley Rice LLC.

1.14    "Litigation" means the action captioned *In re Medtronic, Inc. Securities Litigation*, No. 0:13-cv-01686-MJD-KMM.

1.15    "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.16    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.17    "Plaintiffs" means Employees' Retirement System of the State of Hawaii, Union Asset Management Holding AG, and West Virginia Pipe Trades Health & Welfare Fund.

1.18    "Plaintiffs' Counsel" means any attorney or firm who has appeared in the Litigation on behalf of Plaintiffs.

1.19    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized

- 9 -

Claimants.  Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.20    "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2, that a Class Member must complete and submit should that Class Member seek to share in a distribution of the Net Settlement Fund.

1.21    "Related Parties" means each Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

1.22    "Released Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiffs or any other Member of the Class asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the purchase or acquisition of Medtronic publicly traded common stock during the Class Period, and (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation.  "Released Claims" does not

- 10 -

include any derivative or ERISA claims or claims to enforce the Settlement. "Released Claims" includes "Unknown Claims" as defined in ¶1.31 hereof.

1.23   "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

1.24   "Released Persons" means each and all of the Defendants and their Related Parties.

1.25   "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.26   "Settlement Amount" means Forty-Three Million Dollars ($43,000,000.00) in cash to be paid by check or wire transfer to the Escrow Agent pursuant to ¶2.1 of this Stipulation.

1.27   "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.28   "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.29   "Settling Parties" means, collectively, Defendants and Plaintiffs, on behalf of themselves and the Class.

1.30    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.31    "Unknown Claims" means (a) any and all Released Claims which Plaintiffs, Plaintiffs' Counsel, or any Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiffs, Plaintiffs' Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiffs, Plaintiffs' Counsel, or Class Members.  With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the**

- 12 -

**release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

2.     **The Settlement**

a.     **The Settlement Amount**

2.1     In full and final settlement of the claims asserted in the Litigation against Defendants and in consideration of the releases specified in ¶4 herein, Medtronic shall cause

- 13 -

the Settlement Amount to be paid by check or wire transfer in accordance with instructions to be provided by the Escrow Agent on or before fifteen (15) business days after the later of: (i) the entry of the Preliminary Approval Order, as defined in ¶3.1 herein, and (ii) the provision to Defendants of all information necessary to effectuate a transfer of funds, including, but not limited to, the bank name and ABA routing number, account name and number, and a signed W-9 reflecting the taxpayer identification number for the Settlement Fund.  The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

2.2     If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the Settlement but only if:  (i) Lead Counsel have notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel have provided such written notice.

2.3     Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund set forth in ¶2.1 herein, Defendants shall have no obligation to make any other payment into the Settlement Fund pursuant to this Stipulation, and shall have no responsibility, obligation, or liability with respect to the Escrow Account or the monies maintained in the Escrow Account or the administration of the Settlement, including, without limitation, any responsibility or liability related to any fees, Taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

### b.       The Escrow Agent

2.4      The Escrow Agent shall invest the Settlement Amount deposited pursuant to

¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by

the Full Faith & Credit of the United States Government or an Agency thereof, or fully

insured by the United States Government or an Agency thereof and shall reinvest the

proceeds of these instruments as they mature in similar instruments at their then-current

market rates.  All risks related to the investment of the Settlement Fund in accordance with

the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund,

and the Released Persons shall have no responsibility for, interest in, or liability whatsoever

with respect to investment decisions or the actions of the Escrow Agent, or any transactions

executed by the Escrow Agent.

2.5      The Escrow Agent shall not disburse the Settlement Fund except as provided in

this Stipulation, by an order of the Court, or with the prior written agreement of Defendants'

counsel.

2.6      Subject to further order(s) and/or directions as may be made by the Court, or as

provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as

are consistent with the terms of this Stipulation.  The Released Persons shall have no

responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow

Agent, or any transaction executed by the Escrow Agent.

2.7      All funds held by the Escrow Agent shall be deemed and considered to be in

*custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until

- 15 -

such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval and/or order of the Court, reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class by mail, publication, and other means, locating Class Members, assisting with the submission of claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow fees and costs, if any ("Notice and Administration Expenses") up to the sum of $1,000,000.00.  Prior to the Effective Date, all such Notice and Administration Expenses in excess of $1,000,000.00 shall be paid from the Settlement Fund subject to prior approval of the Court.  The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

### c.     Taxes

2.9     (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1).  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements

- 16 -

contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the elections described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no

- 17 -

liability or responsibility whatsoever for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.9.

2.10   This is not a claims-made settlement. As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

### d.   Termination of Settlement

2.11   In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally

- 18 -

attacked, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.8 and 2.9 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' counsel in accordance with ¶7.6 herein.

### 3.    Preliminary Approval Order and Settlement Hearing

3.1    Within ten (10) calendar days after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing as defined below.

3.2    Medtronic shall provide to the Claims Administrator, at no cost to Plaintiffs or the Class, within five (5) business days of the date of entry of the Preliminary Approval Order, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of Persons who purchased or otherwise acquired Medtronic publicly traded common stock during the Class Period.  It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court.  Class Members shall have no

- 19 -

recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

3.3     Lead Counsel shall request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 *et seq.* ("CAFA") as set forth in ¶3.4 below, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.4     Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve upon the appropriate State official of each State in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of CAFA.  Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

## 4.     Releases

4.1     Upon the Effective Date, as defined in ¶1.7 hereof, Plaintiffs shall, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund.  Claims to enforce the terms of this Stipulation are not released.

1441202_3

4.2     Any Proof of Claim and Release that is executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3     Upon the Effective Date, Plaintiffs, all Class Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Persons.

4.4     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against the Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel.  Claims to enforce the terms of this Stipulation are not released.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2     The Settlement Fund shall be applied as follows:

    (a)     to pay all Notice and Administration Expenses;

    (b)     to pay the Taxes and Tax Expenses;

(c)      to pay attorneys' fees and expenses of Plaintiffs' Counsel and reimbursement of Plaintiffs' expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)      after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3     After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4     Within one hundred-twenty (120) days after the mailing of the Notice or such other time as may be set by the Court, each Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

5.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the

- 22 -

Released Persons concerning the Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person shall have any claim against Plaintiffs, their counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7     Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.8 below.

5.8     If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20)

- 23 -

calendar days after the date of mailing of the notice required in ¶5.7 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9     Each claimant who declines to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim.  In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.

5.10    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economical fashion.  Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate,

- 24 -

shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel.

5.11    Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in ¶¶5.1-5.13 hereof; and Class Members, Plaintiffs, and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12    No Person shall have any claim against Defendants or their Related Parties, Defendants' counsel, Plaintiffs, Plaintiffs' Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this

- 25 -

Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

### 6. Plaintiffs' Counsel's Attorneys' Fees and Expenses

6.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for:  (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  An application for fees and expenses may include a request for reimbursement of Plaintiffs' reasonable costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995.  Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2     Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.  Lead Counsel may thereafter allocate the attorneys' fees among Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or

termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, including their partners and/or shareholders, and such other Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, and Plaintiffs who have received any portion of the Fee and Expense Award shall, within five (5) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination.  Any refunds required pursuant to ¶6.3 shall be the several obligation of Lead Counsel, including their partners and/or shareholders, Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, and Plaintiff that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Each such Lead Counsel, Plaintiffs' Counsel, or Plaintiff receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that (a) such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and (b) are severally liable for the full amount of all fees, expenses, and costs paid from the Settlement Fund.  Without limitation, Lead Counsel, Plaintiffs' Counsel, and Plaintiffs and their partners, shareholders, and/or members agree that the Court may, upon application of Defendants and notice to Lead Counsel and Plaintiffs' Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make

appropriate findings of or sanctions for contempt, should such law firms or their partners, shareholders, or members fail to timely repay fees and expenses pursuant to this paragraph.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by any Plaintiffs' Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

6.5     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of Medtronic's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.1, Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Plaintiffs' Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

6.6     Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

1441202_3

6.7     Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Class Member, whether or not paid from the Escrow Account.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)     the Settlement Amount has been deposited into the Escrow Account;

(c)     Medtronic has not exercised its option to terminate the Stipulation pursuant to ¶7.3 hereof;

(d)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto, following notice to the Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(e)     the Judgment has become Final, as defined in ¶1.9 hereof.

7.2     Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If the conditions specified in ¶7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶7.5, 7.6 and 7.7 hereof unless Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with the Settlement.

- 29 -

7.3     Medtronic shall have the right to terminate the Settlement and render it null and void in the event that Class Members who purchased or otherwise acquired more than a certain percentage of Medtronic publicly traded common stock subject to this Settlement exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Plaintiffs and Medtronic, by and through their counsel.  The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application.   If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

7.4     Each of Plaintiffs and Medtronic shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of:  (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect by the Court, the U.S. Court of Appeals for the Eighth Circuit, or the Supreme Court of the United States.

7.5     If, before the Settlement becomes Final, Medtronic files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other

- 30 -

fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by Medtronic to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned to Medtronic out of the Escrow Account, and such amount is not promptly placed in the Escrow Account by others, then, at the election of Plaintiffs, the Settling Parties shall jointly move the Court to vacate and set aside the Judgment, including the releases pursuant thereto, and the Settlement and this Stipulation shall terminate.

7.6     Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Defendants' counsel or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.8 and/or 2.9 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.8 and/or 2.9 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution.  Such refunds shall be pursuant to written instructions from Defendants' counsel.  The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the same Persons in the same

- 31 -

manner as the Settlement Fund described in this ¶7.6.  Such payments shall be pursuant to written instructions from Defendants' counsel.

7.7     In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of May 31, 2018.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.31, 2.6-2.11, 6.3-6.4, 7.4-7.7, and 9.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

7.8     If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Plaintiffs nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.8 or 2.9.  In addition, any amounts already incurred pursuant to ¶¶2.8 or 2.9 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.11 and 7.6 hereof.

## 8.     No Admission of Wrongdoing

8.1     Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan

of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by Plaintiffs or any Member of the Class or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Defendant, or against Plaintiffs or any Member of the Class as evidence of any infirmity in the claims of Plaintiffs and the Class;

(c)     shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if

this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d)     shall be construed against Defendants, Plaintiffs, or the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

### 9.     Miscellaneous Provisions

9.1     The Settling Parties:  (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

9.2     No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.3     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut,

- 34 -

in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.4     Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.5     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.6     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.7     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.8     This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

9.9     Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

- 35 -

9.10     Lead Counsel, on behalf of the Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which they deem appropriate.

9.11     Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.12     This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or pdf'd via e-mail shall be deemed originals.

9.13     All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (i) when delivered personally to the recipient, (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) seven (7) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

*If to Plaintiffs or to Lead Counsel:*

ROBBINS GELLER RUDMAN          MOTLEY RICE LLC
  & DOWD LLP                                CHRISTOPHER F. MORIARTY
ELLEN GUSIKOFF STEWART          28 Bridgeside Blvd.
655 West Broadway, Suite 1900       Mt. Pleasant, SC  29464
San Diego, CA  92101

- 36 -

***If to Defendants or to Defendants' counsel:***

WILLIAMS & CONNOLLY LLP
JOSEPH G. PETROSINELLI
725 Twelfth Street, N.W.
Washington, DC 20005

9.14 This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.15 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

9.16 The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

9.17 Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

9.18 This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Minnesota, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Minnesota without giving effect to its choice-of-law principles.

- 37 -

9.19    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.20    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated July 17, 2018.

ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS

_____
        SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
ROBERT R. HENSSLER JR.
DANIELLE S. MYERS
SUSANNAH R. CONN
HILLARY B. STAKEM
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
elleng@ rgrdlaw.com
jonahg@rgrdlaw.com
bhenssler@rgrdlaw.com
dmyers@rgrdlaw.com
sconn@rgrdlaw.com
hstakem@rgrdlaw.com

MOTLEY RICE LLC
JAMES M. HUGHES
WILLIAM S. NORTON
MEGHAN S. B. OLIVER
CHRISTOPHER F. MORIARTY


_____
JAMES M. HUGHES

28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
jhughes@motleyrice.com
bnorton@motleyrice.com
moliver@motleyrice.com
cmoriarty@motleyrice.com

Lead Counsel for Plaintiffs

1441202_3

ZIMMERMAN REED, PLLP
CAROLYN G. ANDERSON, MN 275712
BRIAN C. GUDMUNDSON, MN 336695
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: 612/341-0400
612/341-0844 (fax)
Carolyn.Anderson@zimmreed.com
Brian.Gudmundson@zimmreed.com

Liaison Counsel

PRICE OKAMOTO HIMENO
  LUM
WARREN PRICE, III
728 Ocean View Center
707 Richards Street
Honolulu, HI 96813
Telephone: 808/538-1113
808/533-0549 (fax)

Additional Counsel for Plaintiffs

WILLIAMS & CONNOLLY LLP
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
AMANDA M. MACDONALD

_____
           AMANDA M. MACDONALD

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202/434-5000
202/434-5029 (fax)
jpetrosinelli@wc.com
sfarina@wc.com
amacdonald@wc.com

- 40 -

DORSEY & WHITNEY LLP
JAMES K. LANGDON
THERESA M. BEVILACQUA
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402
Telephone:  612/340-2600
612/340-4534 (fax)
langdon.jim@dorsey.com
bevilacqua.theresa@dorsey.com

Counsel for Defendants

1441202_3